UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALEXANDER PHILLIPS ppa Ralph E. Phillips,<br>    Plaintiff,<br><br>v.<br><br>TOWN OF HEBRON, et al.,<br>    Defendants. | No. 16-cv-1726 (MPS) |

**Ruling on Motion to Remand**

**I.    Introduction**

Defendants Town of Hebron, Hebron Board of Education, and various teachers and school officials at a Hebron elementary school (collectively, the "Defendants") removed this case from Connecticut Superior Court on the basis of federal question jurisdiction. Although the complaint pleads claims created by state statutes and common law, Defendants contend that federal question jurisdiction exists because those claims assert the violation of a duty created by federal law, i.e., the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et. seq. (ECF No. 1 at 2.) Plaintiff has filed a motion to remand the case to state court, arguing that the complaint does not raise a "substantial federal question" under relevant Supreme Court case law. (ECF No. 12 at 1.) For the reasons set forth below, I agree with Plaintiff and grant the motion to remand.

**II.    Background**

   **A.  Facts Alleged in the Complaint**

Plaintiff, Alexander Phillips, is a seven-year-old child diagnosed with Down Syndrome and "without functional speech." (ECF No. 1-2 at 2.)[1] He attends Gilead Hill Elementary School ("Gilead"), a public school in Hebron, Connecticut, where he has an individualized education

---

[1] Due to duplicative numbering of the paragraphs in the complaint, I cite the docket page number of the complaint.

1

program ("IEP").² Alexander's IEP provides that he is to "spend 26.33 hours per week with children/students who do not have disabilities." (*Id*. at 5.)

On February 25, 2015, Alexander's father, Ralph Phillips, visited Alexander's kindergarten classroom. (*Id*. at 3.) During his visit, Mr. Phillips "noticed that Alexander and Mrs. Prior, the paraprofessional assigned to Alexander, went into the coatroom." (*Id*.) Mr. Phillips was invited to observe. (*Id*.) Mr. Phillips "saw that there was a desk and chair for Alexander" in the coatroom. (*Id*.) Mr. Phillips was not aware of this arrangement and had never consented to it. (*Id*. at 5.) Following his visit to Alexander's classroom, on March 2, 2015, Mr. Phillips met with Mr. Joshua Martin, the Director of Special Education for Hebron Public Schools, to discuss how much time Alexander spent in the coatroom each day. (*Id*. at 3-4.) Mr. Martin indicated that he did not know why "Alexander would have to go to the coatroom unless there was some discrete testing going on" and assured Mr. Phillips he would look into it. (*Id*. at 4.)

In the interim, on March 25, 2015, Mr. Phillips attended a planning and placement team meeting (a "PPT") with Alexander's classroom teacher, Ms. Poulin, and his special education teacher, Mrs. Ellsworth. (*Id*. at 4.) At the PPT, Mr. Phillips inquired as to how much time Alex spent in the coatroom. (*Id*.) Mrs. Ellsworth responded that Alex spent "on average, about 40 minutes a day" in the coatroom doing projects or classwork. (*Id*.) Ms. Poulin added that Alex "work[ed] in the coatroom because his projects require[d] a lot of space and there [was not] enough [space] in the classroom" and further, that Alex was assigned to the coatroom because he could be "distracting to other children" and other children could "be distracting to him." (*Id*. at 5.) Five

---

² An IEP is "the result of collaborations between parents, educators, and representatives of the school district, [and] sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *T.Y. v. New York City Dept. of Educ.*, 584 F.3d 412, 415 (2d Cir. 2009).

2

days after the PPT, on March 30, 2015, Gilead notified Mr. Phillips that Alexander's workspace had been moved from the coatroom into the classroom. (*Id*.)

More than a year later, on June 22, 2016, Mr. Philips learned that Ms. Ellen Kirkpatrick, Gilead's school nurse, on May 13, 2016, had -- without Mr. Phillips' consent -- taken Alexander "into a room at school, removed his clothes, photographed him with her personal cellphone, and sent the photographs via text message to a third party." (*Id*. at 23.) Two days earlier, on May 11, 2016, Ms. Kirkpatrick had requested and received permission from Ms. Patricia Buell, Hebron's Director of Educational Services, to take that action. (*Id*. at 24-25.) After learning of the May 13 incident, Mr. Phillips convened a meeting with Mr. Timothy Van Tasel, the Superintendent of Hebron Public Schools, to discuss the incident. (*Id*. at 26-27.) At that meeting, Superintendent Tasel informed Mr. Phillips that he had directed Hebron staff to maintain communication with Mr. Phillips and obtain his consent before taking any actions concerning Alexander. (*Id*. at 27.)

### B. Plaintiff's Causes of Action

In his complaint, Plaintiff asserts seventeen state law causes of action arising from his placement in the coatroom and the photographs taken by Ms. Kirkpatrick. Plaintiff claims (i) discrimination in violation of Conn. Gen. Stat. §§ 46a-58(a) and 46a-75(a) and (b) (counts one through five); (ii) negligence per se (counts six through ten); (iii) assault (counts eleven and twelve); and (iv) negligence (counts thirteen through seventeen).

More specifically, the discrimination claims (counts one through five) allege the defendants – Hebron Board of Education, Martin, Wilson, Ellsworth, and Poulin – violated Conn. Gen. Stat. §§ 46a-58(a) and 46a-75(a) and (b) when they deprived Alexander of "his rights, privileges or immunities secured or protected by the Constitution or laws of [Connecticut] or of the United States on account of [his] disabilities." (ECF No. 1-2 at 6-9, 11, 13.) In those claims,

3

Plaintiff also alleges that those defendants violated Alexander's "right to be educated in the least restrictive environment as provided by [the IDEA.]." (*Id*. at 7.) Further, in the negligence per se counts (six through ten), Plaintiff claims that the same defendants "had a duty under [the IDEA] to educate [Alexander] in the least restrictive environment," and they breached that duty because they "knew or should have known that [Alexander] was not spending time with nondisabled children to the maximum extent possible" resulting in "imminent harm and/or detriment to his academic and social development." (*Id*. at 15-22.) The next two counts – counts eleven and twelve – claim assault by defendants Kirkpatrick and Buell. (*Id*. at 23-26.) The final counts – thirteen through seventeen brought against defendants Van Tasel, Brody, Martin, Wilson, and Buell – assert multiple theories of negligence, including that Martin and Wilson "failed to take reasonable steps to supervise and/or control" school staff "to ensure [Alexander's] rights under state and federal law were protected." (*Id*. at 32, 34.)

## III. Relevant Law

### A. Removal

Defendants – the removing parties – bear the burden of demonstrating that removal was proper. *United Food & Commercial Workers Union, Local 919 v. Centermark Properties*, 30 F.3d 298, 301 (2d Cir. 1994)(observing where "jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper")(internal quotation marks and citations omitted). Furthermore, the "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Electrical Contractors, Inc. v. State of Conn. Dept. of Tranp.*, 139 F. Supp. 2d 265, 267 (D. Conn. 2001)(internal quotation marks and citations omitted). Defendants assert that removal was proper because there is federal question jurisdiction. (ECF No. 1 at 2.) Defendants assert no other basis

4

for jurisdiction. Federal question jurisdiction exists if one of Plaintiff's claims "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### B. The Individuals with Disabilities Education Act

The purpose of the IDEA is "to provide free appropriate public education" to "all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. School*, 137 S. Ct. 743, 748 (2017)(internal quotation marks and citations omitted). A free appropriate public education "comprises special education and related services—both instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction." *Id*. at 748-49 (internal quotation marks and citations omitted). To that end, the IDEA provides for IEPs, which "serve[] as the primary vehicle for providing each child with the promised [free appropriate public education]." *Id*. at 749 (internal quotation marks and citations omitted). "Crafted by a child's IEP team – a group of school officials, teachers, and parents – the IEP spells out a personalized plan to meet all of the child's educational needs." *Id*. (internal quotation marks and citations omitted). The IEP, for example, "documents the child's current levels of academic achievement, specifies measurable annual goals for how []he can make progress in the general education curriculum and lists the special education and related serves to be provided so that []he can advance appropriately toward those goals." *Id*. Furthermore, a provision of the IDEA cited in the Plaintiff's complaint and entitled "Least Restrictive Environment" mandates that "[t]o the maximum extent appropriate, children with disabilities…are [to be] educated with children who are not disabled and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of

the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A).[3]

**IV. Discussion**

To show removal was proper, Defendants must show that Plaintiff's claims "arise[] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A claim arises under those laws if either (i) federal law creates one of the causes of action asserted in the complaint, or (ii) Plaintiff's claims fall in a "small category" of cases where "a claim that finds its origins in state rather than federal law" raises a "substantial" federal question. *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). More specifically, in the latter category, "federal jurisdiction over a state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id*. at 1065. All four requirements must be met for a case to fall into this "special and small category." *Id*. at 1064-65. The complaint in this case alleges no causes of action created by federal law.[4] Therefore, whether federal question jurisdiction exists in this case depends on whether Plaintiff's case falls within the "special and small category of cases," *id*. at 1064, in which the Court must resolve "a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983)(internal quotation marks and citations omitted).

Citing the complaint's references to Alexander's IEP and the IDEA, Defendants contend that Plaintiff's claims, specifically his claims of discrimination in violation of state statutes and

---

[3] Plaintiff's complaint refers to this provision as Section 1412(*C*)(5), but apparently means Section 1412(a)(5).
[4] Though the IDEA provides a private right of action for disabled children and their parents to file suit in federal court after exhausting the IDEA's administrative process, 20 U.S.C. § 1415(i)(2), Plaintiff has not brought a claim under this provision.

6

claims for negligence and negligence per se, present substantial questions of federal law because the claims are "predicated upon the alleged failure to educate the minor plaintiff in the least restrictive environment, a requirement of the IDEA." (ECF No. 15 at 4.) For the reasons explained below, however, even if the complaint's reliance on the IDEA raises a disputed federal question, it does not raise a substantial one or one "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005).

### A. Negligence Claims (Counts 13-17)

Plaintiff's negligence claims do not "necessarily" raise a federal issue because Plaintiff may prevail on those claims without showing a violation of the IDEA. Counts thirteen, fourteen, and seventeen do not even reference federal law, and so no federal issue is raised. (ECF No. 1-2 at 29-32, 35-38.) Counts fifteen and sixteen do reference federal law, but only as one of multiple specifications of negligence. (*Id.* at 33-34)(alleging Defendants Martin and Wilson "failed to take reasonable steps to supervise and/or control the aforementioned staff at Gilead Hill Elementary School to ensure [Alexander's] rights under state and federal law were protected.") Such references do not necessarily raise a federal question because under Connecticut law, a plaintiff need only prove negligence in one of the ways alleged in his complaint for a defendant to be liable. *Wenger v. Town of Easton*, No. 13-cv-695, 2013 WL 5445320, at * 3 (D. Conn. Sept. 30, 2013)("Under Connecticut law, proof that the defendant was negligent in just one of the ways claimed is sufficient to prove negligence.")(internal quotation marks and citations omitted); *see also In re The Reserve Fund Securities and Derivative Litig.*, 2009 WL 3634085, at *4 (S.D.N.Y. Nov. 3, 2009)("Courts in this Circuit have made clear that the exercise of federal jurisdiction is inappropriate where no cause of action necessarily stands or falls based on a particular

7

interpretation or application of federal law.")(internal quotation marks, alterations and citations omitted). Because these claims do not require the resolution of a federal question, they do not provide a basis for federal jurisdiction. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005)(observing "[w]here a federal issue is present as only one of multiple theories that could support a particular claim, however, this is insufficient to create federal jurisdiction" and "[o]ne of the key characteristics of a mere theory as opposed to a district claim, is that a plaintiff may obtain the relief he seeks without prevailing on it")(internal quotation marks and citations omitted).

### B. Negligence Per Se Claims (Counts 6-10)

While Plaintiff's negligence per se claims necessarily raise a federal question because they resort to the IDEA to define the duty at issue, the question they raise is not "substantial." For a question to be substantial, "it is not enough that the federal issue be important to the parties in a particular suit," *Gunn*, 133 S. Ct. at 1066 (internal quotation marks and citations omitted), or that there is a "mere need to apply federal law in a state-law claim." *Grable*, 545 U.S. at 313. A "substantial" federal question is raised when its "resolution [is] both dispositive of the case and would be controlling in numerous other cases." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)(internal quotation marks and citations omitted). Such a question "present[s] a nearly pure issue of law" that "would govern numerous [other similar] cases" as opposed to "fact-bound and situation specific" issues. *Id*. at 700-01 (internal quotation marks and citations omitted); *compare Meyer v. Health Management Associates, Inc.*, 841 F. Supp. 2d 1262, 1268-69 (S.D. Fla. 2012)(holding there was no substantial question of federal law presented in a wrongful termination suit because it involved context-specific factual determination of whether the employer violated federal Medicare provisions) *with Smith v. Kansas City Title and Trust Co.*, 255 U.S. 180 (1921)(there was federal question jurisdiction over suit by shareholder asserting Missouri-law

claim that defendant corporation could not buy federal government bonds because their issue was unconstitutional). Thus, "[t]he mere reference to federal statutes, even where a plaintiff argues that they set forth a standard of care, is an insufficient basis for the court to exercise federal question jurisdiction." *Elmaliach v. Bank of China, Ltd.*, No. 09-cv-2130, 2010 WL 1172829, at * 8 (S.D.N.Y. Mar. 26, 2010)(internal quotation marks and citations omitted)(citing cases); *Elmira Teachers' Ass'n v. Elmira City School Dist.*, No. 06-cv-6513, 2006 WL 240552, at * 6 (W.D.NY. Jan. 27, 2006)(granting motion to remand in a negligence case where "[26] U.S.C. § 403(b)…merely provide[d] the standard of care"); *In re the Reserve Fund Securities and Derivative Litigation*, 2009 WL 3634085, at *5 ("That federal law might serve to provide a standard of care for a state law claim, however, is an insufficient foundation for the exercise of federal jurisdiction.")(internal quotation marks and citations omitted)(citing cases); *Taylor v. Lewis*, 772 F. Supp. 2d 1040, 1044 (E.D. Mo. 2011)(holding that there was no substantial federal question present though it was "possible that the Missouri courts may look to the [housing quality standards] as defined in 24 C.F.R. § 401 when determining what standard of care…Defendant owed Plaintiff"). Apart from not being sufficient to make the question "substantial," the reliance on federal law standards in negligence per se claims does not make the federal question "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. This is evident from the Supreme Court's discussion of negligence per se claims in *Grable*:

> One only needed to consider the treatment of federal violations generally in garden variety state tort law. The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings. A general rule of exercising federal jurisdiction over state law claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts.

9

545 U.S. at 318-19. This, too, is a case in which treating the presence of a federal question in the duty element of a state law claim would open the federal courts to a broad flow of state-law tort claims. Not surprisingly, then, other courts have remanded suits – such as this one – where a plaintiff alleges negligence based on duties owed to him under the IDEA. *See Chambers v. Cincinnati Sch. Bd.*, No. 13-CV-618, 2014 WL 1909996, at *3 (S.D. Ohio May 13, 2014)("Courts considering whether the creation under IDEA of a duty of care is sufficient to confer federal question jurisdiction in the absence of a claim brought under another federal statute, such as 42 U.S.C. §1983, conclude that it does not.")(internal quotation marks, citations, and alterations omitted)(citing cases); *Reuther v. Shiloh Sc. Dist. No. 85*, No. 07-cv-689, 2008 WL 191195, at *3-4 (S.D. Ill. Jan. 18, 2008)(finding no federal question jurisdiction where plaintiff "advance[d] [the IDEA] solely as the creator of duties owed [to the student]" and "the theories upon which the[] claims [were] based [were] solely state tort law")(internal quotation marks and citations omitted).[5]

In this case, each of the negligence per se claims merely sets forth the Defendants' duty under the IDEA – specifically the duty to educate Alexander in the least restrictive environment as required by his IEP (ECF No. 1-2 at 15-16, 18, 20-21) –, which is an insufficient basis for the Court to exercise jurisdiction. Further, that issue is factual in nature and not a "nearly pure issue of law." *Empire Healthchoice Assur., Inc.*, 547 U.S. at 700. As the Second Circuit has explained, the evaluation of a defendant's duty under the IDEA to place a child in the least restrictive

---

[5] Such cases are well suited for adjudication in state courts because the remedies (compensatory and punitive damages) often sought in those cases, as in this one, are not even available under the IDEA. *See Reuther*, 2008 WL 191195 at *4 (finding remand appropriate, in part, because plaintiff sought monetary damages not a "change to his IEP"); *see also Polera v. Board of Educ. of New Burgh Enlarged City School Dist.*, 288 F.3d 478, 485 (2d Cir. 2002)("We agree with the prevailing opinion of the other Circuits and districts courts in our Circuit" that the "purpose of the IDEA is to provide educational services, not compensation for personal injury."). In this case, Plaintiff seeks only monetary relief for the injuries allegedly caused by the Defendants. (ECF No. 1-2 at 38.)

10

environment as provided in his IEP is "an individualized and fact specific inquiry into the nature of the student's condition and the school's particular efforts to accommodate it, ever mindful of the IDEA's purpose of educating children with disabilities, to the maximum extent appropriate, together with their non-disabled peers." *See P. ex. Rel. Mr. and Mrs. P. v. Newington Bd. of Ed.*, 546 F.3d 111, 120 (2d Cir. 2008)(internal quotation marks and citations omitted). That analysis requires fact-specific inquiries into (i) "whether education in the regular classroom, with the use of supplemental aids and services can be achieved satisfactorily for a given child" and (ii) "if not, then, whether the school has mainstreamed the child to the maximum extent appropriate." *Id*. (internal quotation marks and citations omitted). With respect to the first inquiry, context-specific factors must also be considered, including: (i) "whether the school district has made reasonable efforts to accommodate the child in a regular classroom"; (ii) "the educational benefits available to the child in a regular class, with appropriate supplementary aids and services, as compared to the benefits provided in a special education class"; and (iii) "the possible negative effects of the inclusion of the child on the education of the other students in the class." *Id*. (internal quotation marks and citations omitted). Those issues are far from the "nearly pure issue[s] of law" sufficient to warrant federal question jurisdiction. *Empire Healthchoice*, 547 U.S. at 700. Rather, they are the "fact-bound and situation-specific" questions that preclude finding a substantial question of federal law. *See id*. at 701. In this case, for example, they would require a court to make a careful assessment of the need for and effect of placing Alexander in the coatroom for supplemental instruction, an assessment that would depend in part on the dimensions and layout of the coatroom, the uses to which it was put, and its proximity to the main classroom. Plainly, the resolution of such fact-specific questions would not govern other similar cases asserting a breach of duty owed under the IDEA to educate disabled children in the least restrictive environment. Because I find

11

that no substantial question of federal law is present, and because the extension of federal question jurisdiction to this case raises the concerns articulated in *Grable*, I find that there is no basis for federal question jurisdiction over Plaintiff's negligence per se claims.

### C. Discrimination Claims (Counts 1-5)

Plaintiff's discrimination claims do not "necessarily" raise a federal issue. The two state statutes invoked in these counts both prohibit discrimination on the basis of disability, and the complaint alleges that the defendants -- Hebron Board of Education, Martin, Wilson, Ellsworth, and Poulin -- have violated that prohibition. *See* Conn. Gen. Stat. § 46a-58(a)(providing in part "[i]t shall be a discriminatory practice in violation of this section for any person to…cause to be subjected, any other person the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of this State or the United States, on account of…mental disability or physical disability"); Conn. Gen. Stat. § 46a-75(a)(providing in part that "[a]ll educational, counseling, and vocational guidance programs and all apprenticeship and on-the-job training programs or stage agencies, or in which state agencies participate, shall be open to all qualified person without regard to…mental retardation, mental disability, learning disability, or physical disability…"); (ECF No. 1-2 at 6-8, 11, 13)("The defendant Hebron Board of Education…segregated minor plaintiff from other children/students without disabilities on the basis of minor plaintiff's disabilities…[and thereby] violated Connecticut General Statutes §§ 46a-58(a) and 46a-75(a) and (b) when it deprived the minor plaintiff of his rights, privileges, or immunities secured or protected by the Constitution or laws of this state or of the United States on account of the disabilities of the minor plaintiff."). These claims can be resolved by a determination of whether the defendants have done so and thus do not require resolution of a federal question. Thus, like the negligence claims in counts thirteen through seventeen, the

discrimination claims do not necessarily raise a question of federal law. *See Broder*, 418 F.3d at 194. That conclusion is unaltered by the reference in these counts to IDEA's definition of "Least Restrictive Environment" or the assertion that the defendants violated the "minor plaintiff's right to be educated in the least restrictive environment…" (ECF No. 1-2 at 6-8, 11, 13.) It is not necessary to resolve that assertion because the defendants could have violated the state statutory prohibitions against disability-based discrimination without violating that IDEA provision. Finally, contrary to Defendants' assertion, even if these state statutes do not create a private cause of action, that would not make these claims hinge on a federal question. To the contrary, whether these state statutes create a private cause of action is a question of state law, and a determination that they do not would raise no issue of federal law.

### D. Assault Claims (Counts 11-12)

Plaintiff's claims for assault are plainly state law claims that do not present any federal question. *See In re the Reserve Fund Securities and Derivative Litig.*, 2009 WL 3634085, at *4.

## V. Conclusion

For the reasons set forth above, I hereby **GRANT** the motion to remand.[6] The Clerk is directed to remand this case to Superior Court and close the case.

IT IS SO ORDERED.

/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
                August 7, 2017

---

[6] Because I lack jurisdiction, I need not consider the issue whether Plaintiff has exhausted his remedies under the IDEA.